

DA 10-0445

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 61

CITY OF MISSOULA,

        Plaintiff and Appellee,

   v.

JESSICA JO MOORE,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC 10-239
Honorable Douglas G. Harkin, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Julio K. Morales, Attorney at Law, Missoula, Montana

        For Appellee:

        Steve Bullock, Montana Attorney General; Matthew T. Cochenour,
        Assistant Attorney General, Helena, Montana

        Carrie Garber, Deputy City Attorney, Missoula, Montana

Submitted on Briefs:  March 8, 2011

Decided:  April 5, 2011

Filed:

_____
                    Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1    Jessica Jo Moore (Moore) pled no contest in Missoula Municipal Court to operating a noncommercial vehicle with an alcohol concentration of .08 or more (DUI per se), reserving her right to appeal the court's denial of her motion to suppress and dismiss. The Fourth Judicial District Court, Missoula County, denied Moore's appeal.

¶2    Moore raises the following issues on appeal:

¶3    Issue 1: *Did the District Court correctly determine that Moore was raising for the first time on appeal an objection to the 911 transcripts?*

¶4    Issue 2: *Does substantial evidence support the District Court's finding that Officer Arianna Adams (Officer Adams) had particularized suspicion to conduct an investigatory stop of Moore's vehicle?*

## BACKGROUND

¶5    On the afternoon of September 21, 2009, Moore, with her two children, drove to her friend Laurie Banks' (Laurie) home. Moore was upset and smelled of alcohol when she arrived, leading Laurie to believe Moore was intoxicated. After staying at Laurie's for approximately one hour, Moore left her children with Laurie and drove away. Laurie called 911, reporting that she "just had a friend of [hers] jump in a vehicle, very upset and she's had a lot to drink." Laurie informed dispatch that Moore was driving a red Blazer and was heading toward Reserve Street, but was probably not out of her neighborhood yet. Laurie gave dispatch her full name, address, and telephone number.

¶6     Moore's husband, Kurt Moore (Kurt), telephoned 911 to report Moore had been drinking and was driving.  Kurt, who was following Moore, provided a description of her vehicle and the direction she was traveling.  Kurt informed dispatch that Moore had told him she had consumed one beer earlier, but he did not know if "it's one beer or six beers or thirty-seven beers."  Although Moore was not driving badly, Kurt was scared because she had a previous DUI and he did not want anyone getting hurt.  Kurt gave dispatch his full name, telephone number, and home address.

¶7     As Kurt was speaking with 911, Missoula Police Department Officer Adams stopped Kurt for speeding.  When Officer Adams approached the truck, Kurt told her, "[m]y wife has been drinking in that Blazer and I'm with 911 right now.  Yes, yes, it's over the inter . . . it's over the pass.  [police, unintelligible] Yes! Yes!"  Simultaneously, dispatch was advising units of an intoxicated driver who matched Moore's description.  Officer Adams terminated the stop, caught up to Moore's vehicle, and initiated a traffic stop.  Moore was arrested for DUI.

¶8     In Municipal Court, Moore filed a motion to suppress and dismiss, claiming Officer Adams lacked particularized suspicion to stop her vehicle.  Moore argued the information available to Officer Adams fell short of the requirements set forth in *State v. Pratt*, 286 Mont. 156, 951 P.2d 37 (1997).  At a hearing on Moore's motion, Moore, before any testimony was heard, objected to "any evidence that exceeds what was available to the officer at the time of the stop that was initiated . . . because it would be beyond the scope of the evidence that should be admitted for the purposes of determining

3

whether the officer had probable cause to initiate the traffic stop." The Municipal Court took the objection under advisement and heard testimony from Laurie, Kurt, and Officer Adams. During the hearing, Moore stipulated to the admission of the 911 transcripts from Laurie's and Kurt's calls. At the close of the hearing, the Municipal Court stated that it would consider the 911 transcripts, among other things, before reaching an opinion. Moore did not object.

¶9 The Municipal Court denied Moore's motion to suppress and dismiss. Moore pled no contest to DUI per se, reserving her right to appeal the denial of her motion. On appeal, Moore argued no particularized suspicion existed to justify the stop, and the Municipal Court erred when it considered the 911 transcripts in determining whether particularized suspicion existed. The District Court rejected Moore's argument regarding the 911 transcripts, finding that her argument had not been preserved for appeal. The District Court determined the Municipal Court properly denied Moore's motion to suppress and dismiss and denied her appeal. Moore appeals the District Court's consideration of the 911 transcripts and conclusion that particularized suspicion existed.

## STANDARD OF REVIEW

¶10 We review a district court's grant or denial of a motion to suppress to determine whether the court's findings are clearly erroneous and whether those findings were applied correctly as a matter of law. *State v. Clawson*, 2009 MT 228, ¶ 9, 351 Mont. 354, 212 P.3d 1056. A district court's finding that particularized suspicion exists is a question of fact, which we review for clear error. *Id.* A finding is clearly erroneous if it is "not

4

supported by substantial evidence, if the court has misapprehended the effect of the evidence, or if this Court's review of the record leaves us with the firm conviction that a mistake has been made." *State v. Roberts*, 1999 MT 59, ¶ 11, 293 Mont. 476, 977 P.2d 974.

## DISCUSSION

¶11 Issue 1: *Did the District Court correctly determine that Moore was raising for the first time on appeal an objection to the 911 transcripts?*

¶12 Moore argues that her broad, general objection to "any evidence that exceeds what was available to the officer at the time of the stop" preserved for appeal her challenge to the Municipal Court's consideration of the 911 transcripts. Because she objected before the introduction of any evidence, Moore contends her objection should be treated as a motion in limine, which, therefore, relieved her of any obligation to contemporaneously object to the 911 transcripts during the hearing. *See State v. Ankeny*, 2010 MT 224, ¶¶ 38-39, 358 Mont. 32, 243 P.3d 391 (noting a motion in limine avoids objecting to improper arguments in front of the jury, *Cooper v. Hanson*, 2010 MT 113, ¶ 38, 356 Mont. 309, 234 P.3d 59, and may relieve a party of the obligation to contemporaneously object). Moore asserts she tactically did not object to the 911 transcripts during the hearing because she did not want the Municipal Court or the prosecution to question Officer Adams regarding Moore's theory that Officer Adams was unaware of the 911 calls.

5

¶13   We generally refuse to consider arguments raised for the first time on appeal because "it is fundamentally unfair to fault the trial court for failing to rule on an issue it was never given the opportunity to consider." *State v. LaFreniere*, 2008 MT 99, ¶ 11, 342 Mont. 309, 180 P.3d 1161 (internal quotation omitted). An objection that is "very general in nature" does not preserve an issue for appeal. *Id*. at ¶ 12 (internal quotation omitted). Similarly, a motion in limine, while relieving a party of its duty to contemporaneously object at trial, *must be specific and articulate the grounds for the objection*. *Ankeny*, ¶ 39 (emphasis added).

¶14   Moore did not object to the 911 transcripts in Municipal Court. In fact, she stipulated to their admission during the evidentiary hearing. Comments made by both parties and the Municipal Court during the hearing demonstrate a common, shared belief that the 911 transcripts were admitted into the record. At one point in the hearing, the prosecution questioned Kurt concerning what he knew when he called 911. Moore objected, stating:

> Your Honor, we stipulated to the transcript to the 911 call. And the transcript is available to the court, filed with the court, and it's very clear what he said to 911. Now he's being asked how he knew that his wife had been drinking. *If we exceed what he said in the transcript we are exceeding the ruling or the previous ruling of the court on this matter*.

(Emphasis added.) Moore assented to and relied upon the 911 transcripts during the hearing. Her general, global objection at the beginning of the hearing did not preserve for appeal her current objection to the 911 transcripts. *See LaFreniere*, ¶ 12. Further, treating Moore's global objection as a motion in limine does not change the result. Her

6

objection was not specific enough to relieve her of her duty to contemporaneously object during the hearing. *See Ankeny*, ¶ 39. The District Court correctly determined Moore did not preserve her objection for appeal and properly considered the 911 transcripts in analyzing whether particularized suspicion existed.

¶15 Issue 2: *Does substantial evidence support the District Court's finding that Officer Adams had particularized suspicion to conduct an investigatory stop of Moore's vehicle?*

¶16 The United States Constitution and the Montana Constitution prohibit unreasonable searches and seizures. U.S. Const. amend. IV; Mont. Const. art. II, § 11. These constitutional protections apply to investigatory stops of vehicles. *State v. Rutherford*, 2009 MT 154, ¶ 11, 350 Mont. 403, 208 P.3d 389; *State v. Gopher*, 193 Mont. 189, 194, 631 P.2d 293, 296 (1981). An investigatory stop is valid where an officer possesses particularized suspicion that the occupant of the vehicle " 'has committed, is committing, or is about to commit an offense.' " *Rutherford*, ¶ 11 (quoting § 46-5-401(1), MCA). Particularized suspicion exists when an officer has (1) objective data and articulable facts from which he or she can make certain inferences and (2) a resulting suspicion that the vehicle's occupant is, or has been, engaged in wrongdoing. *Brown v. State*, 2009 MT 64, ¶ 20, 349 Mont. 408, 203 P.3d 842. Whether particularized suspicion exists is evaluated under the totality of the circumstances and requires consideration of the quantity or content of the information available to the officer and the quality or degree of reliability of that information. *Rutherford*, ¶ 12.

7

¶17 When an officer's particularized suspicion is based upon a citizen informant's report, the report must contain some indicia of reliability. *Pratt*, 286 Mont. at 164, 951 P.2d at 42. We assess the reliability of the informant's report under the three-part test we adopted in *Pratt*. Under *Pratt*, we consider (1) whether the informant identified himself or herself to the authorities; (2) whether the informant's report is based on personal observations; and, (3) whether the officer's observations corroborated the informant's information. *Id.* at 165, 951 P.2d at 42-43. We consider each *Pratt* factor separately below.

**1. Whether the informant identified himself or herself to the authorities.**

¶18 "A citizen informant who is motivated by good citizenship[1] and [is] willing to disclose the circumstances by which the incriminating information became known is presumed to be telling the truth." *State v. Martinez*, 2003 MT 65, ¶ 34, 314 Mont. 434, 67 P.3d 207 (internal quotations omitted). Information provided by the citizen informant, such as the citizen informant's name, address, and telephone number, lends a "high indicia of reliability" to his or her report. *State v. Myhre*, 2005 MT 278, ¶ 18, 329 Mont. 210, 124 P.3d 126.

¶19 Moore concedes Laurie provided sufficient information to meet this first prong, but argues Kurt did not. Moore argues Kurt was not acting out of good citizenship, but was motivated by his argument with Moore and desire to avoid a speeding ticket. The

---

[1] "This Court distinguishes the concerned citizen who reports a chance encounter with crime as a civic duty from the confidential informant who works with police by reporting on the illegal activities of others." *Martinez*, ¶ 34.

8

Municipal Court and District Court rejected this argument, finding Kurt was acting out of concern for the safety of Moore and society. The record does not support Moore's argument. Laurie and Kurt provided sufficient information to satisfy this first *Pratt* factor.

**2. Whether the informant's report is based on personal observations.**

¶20   As an initial matter, we note that "[a]ll information that the citizen informant gives to the dispatcher is relevant when evaluating the justification for an investigative stop, whether or not it is specifically relayed to the officer in the field." *Clawson*, ¶ 12. Contrary to Moore's assertion, this Court has never required evidence to be presented demonstrating 911 dispatchers are capable of making particularized suspicion determinations. Rather, our precedent provides that courts should "look beyond the information given to the investigating officer to include the information known to the dispatching officer." *Rutherford*, ¶ 16.

¶21   The second significant factor under *Pratt* is whether the informant's report is based on personal observations. *Pratt*, 286 Mont. at 165, 951 P.2d at 42. An officer is allowed to infer that a report is based on a citizen informant's personal observations if the report contains sufficient detail that " 'it is apparent that the informant ha[s] not been fabricating [the] report out of whole cloth . . . [and] the report [is] of the sort which in common experience may be recognized as having been obtained in a reliable way . . . .' " *Id.* at 165, 951 P.2d at 42-43 (citing *State v. Villegas-Varela*, 887 P.2d 809, 811 (Or. 1994) (quoting *Spinelli v. U.S.*, 393 U.S. 410, 417-18, 89 S. Ct. 584, 589-90 (1969)

9

(overruled on other grounds))). An informant's belief that a person is DUI must be based, in part, on his or her personal observations. *Clawson*, ¶ 13. Innocent details that were personally observed by the informant are also relevant in assessing the reliability of the report. *Pratt*, 286 Mont. at 165-66, 951 P.2d at 43.

¶22 Moore argues that Laurie's and Kurt's reports do not satisfy the second prong of *Pratt* because they do not provide objective or articulable facts that indicate they personally observed Moore driving under the influence of alcohol. Specifically, Moore argues Kurt did not personally observe Moore drinking and only reported innocent and secondhand details to 911.[2] Moore attacks Laurie's report on the basis that it is lay opinion, and that, therefore, pursuant to our holdings in *State v. Reiner*, 2003 MT 243, 317 Mont. 304, 77 P.3d 210, and *State v. Lee*, 282 Mont. 391, 938 P.2d 637 (1997), her mere opinion is insufficient to justify an investigative stop.

¶23 Here, both informants provided information based on their personal observations. Laurie personally witnessed Moore's intoxication and driving minutes before she called 911. Based on her interaction with Moore, Laurie was able to conclude and report to 911 that Moore had drank "a lot" and should not be driving. Laurie's report is not "mere opinion" like Moore asserts, and the cases Moore relies on are distinguishable. Both *Reiner* and *Lee* involved anonymous informants who reported possible intoxicated drivers, but neither informant provided dispatch with any bases indicating he/she had

---

[2] Moore admitted to Kurt to having consumed one beer; Kurt witnessed Moore driving in a normal manner; and, Kurt had learned from Laurie that Moore had been drinking.

10

personally observed Reiner or Lee drinking. *Reiner*, ¶ 3; *Lee*, 282 Mont. at 395, 938 P.2d at 640. Unlike the informants in *Reiner* and *Lee*, Laurie identified herself and indicated she had personally observed Moore (Moore was at Laurie's home), leading to her conclusion that Moore had "a lot" to drink.

¶24 Kurt reported Moore had admitted to him over the telephone that she had been drinking; that Laurie had informed him Moore had been drinking; and that he was following Moore's vehicle as he spoke to 911. Citing *State v. Williamson*, 1998 MT 199, 290 Mont. 321, 965 P.2d 231, Moore incorrectly faults Kurt's report for being based, in part, on what Laurie told him. *Williamson* dealt with whether, based on a citizen informant's report, probable cause (a higher standard than particularized suspicion) existed. We concluded the officer did not have probable cause, but we noted the report created a particularized suspicion. *Id.* at ¶ 33. We have acknowledged that an informant's report may be based, in part, on what a reliable third party told him or her. *See Clawson*, ¶ 13 (informant based her report upon her own personal observations and her husband's interactions with the defendant and subsequent conclusion the defendant was intoxicated). Substantial evidence supports the District Court's conclusion here that the second *Pratt* factor was met, as both reports were based upon personal observations.

**3. Whether the officer's observations corroborated the informant's information.**

¶25 An officer corroborates an informant's report by observing illegal activity *or* by finding "the person, the vehicle, and the vehicle's location substantially as described by the informant." *Pratt*, 286 Mont. at 165, 951 P.2d at 43 (emphasis added). If the first

and second *Pratt* factors are met, an officer may corroborate an informant's tip by observing wholly innocent behavior. *Id.* at 168, 951 P.2d at 44. This Court has determined an officer corroborated an informant's report when the officer observed such innocent information as the vehicle's make, model, and color and found it heading in the direction reported. *Rutherford*, ¶ 18.

¶26 Moore concedes Officer Adams corroborated innocent details. We agree. Officer Adams corroborated Kurt's and Laurie's reports when she observed a female driver in a red and silver Blazer, traveling on the street and direction that Kurt described. Because the first and second *Pratt* factors were met, Officer Adams satisfied the third *Pratt* factor by observing Moore, in her vehicle, heading in the direction Kurt described.

## CONCLUSION

¶27 The District Court correctly determined Moore did not preserve for appeal her objection to the 911 transcripts. Substantial evidence supports the District Court's findings that all three *Pratt* factors were satisfied and that particularized suspicion existed justifying the investigatory stop of Moore's vehicle.

¶28 Affirmed.

/S/ MICHAEL E WHEAT

We Concur:

/S/ PATRICIA COTTER
/S/ JIM RICE
/S/ JAMES C. NELSON
/S/ BRIAN MORRIS

12