DA 10-0596

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 276

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

RODRICK ALLEN CAMERON,

      Defendant and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. BDC-2010-250
Honorable Jeffrey M. Sherlock, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Palmer A. Hoovestal, Hoovestal Law Firm, PLLC, Helena, Montana

      For Appellee:

      Steve Bullock, Montana Attorney General, Mardell Ployhar, Assistant
Attorney General, Joshua Van Swearingen, Legal Intern, Helena, Montana

      Leo J. Gallagher, Lewis and Clark County Attorney, Melissa Broch,
Deputy County Attorney, Helena, Montana

Submitted on Briefs:  October 5, 2011

Decided:  November 8, 2011

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1     Rodrick Cameron appeals an order of the District Court for the First Judicial District, Lewis and Clark County, affirming the Justice Court's judgment of conviction and sentence for DUI.  We affirm.

¶2     We address the following issue on appeal:  Whether the District Court erred when it affirmed the Justice Court's denial of Cameron's Motion to Suppress.

**Factual and Procedural Background**

¶3     At approximately 1:00 a.m. on October 31, 2009, Lewis and Clark County Deputy Sheriff Brian Robinson observed a vehicle drift onto the centerline and then return to its own lane four separate times in the space of five miles.  The vehicle never crossed over the centerline into the oncoming lane of traffic, but at one point the vehicle drove on the centerline for approximately 100 yards.  Because it was early Saturday morning close to the time when the bars are closing, Deputy Robinson became suspicious that the driver was impaired.  He activated his emergency lights and stopped the vehicle.  A breath test subsequently revealed that the driver, Cameron, had a blood alcohol content of 0.155.

¶4     Cameron was charged in the Lewis and Clark County Justice Court with driving under the influence (DUI) in violation of § 61-8-401, MCA, and DUI per se in violation of § 61-8-406, MCA.  Cameron filed a Motion to Suppress claiming that Deputy Robinson lacked particularized suspicion to stop him; hence, any evidence obtained as a result of that stop must be suppressed.  The Justice Court denied Cameron's motion.

¶5     Cameron entered a guilty plea to DUI while reserving his right to appeal the denial of his Motion to Suppress.  Thereafter, Cameron appealed the Justice Court decision to

2

the District Court, and the District Court affirmed. Cameron now appeals from the District Court's order.

**Standard of Review**

¶6 We review the denial of a motion to suppress to determine whether the lower court's findings were clearly erroneous and whether those findings were correctly applied as a matter of law. *State v. Flynn*, 2011 MT 48, ¶ 6, 359 Mont. 376, 251 P.3d 143 (citing *State v. Larson*, 2010 MT 236, ¶ 15, 358 Mont. 156, 243 P.3d 1130). Findings of fact are clearly erroneous if they are not supported by substantial credible evidence, if they are based upon a misapprehension of the evidence or if our review of the record convinces us that a mistake has been made. *Flynn*, ¶ 6 (citing *Weer v. State*, 2010 MT 232, ¶ 7, 358 Mont. 130, 244 P.3d 311).

**Discussion**

¶7 *Whether the District Court erred when it affirmed the Justice Court's denial of Cameron's Motion to Suppress.*

¶8 Both the United States Constitution and the Montana Constitution protect individuals from unreasonable searches and seizures. U.S. Const. amend. IV; Mont. Const. art II, § 11. These constitutional protections extend to investigative stops of vehicles made by law enforcement officers. *Flynn*, ¶ 7; *Larson*, ¶ 19. Under Montana Law, a law enforcement officer "may stop any person or vehicle that is observed in circumstances that create a particularized suspicion that the person or occupant of the vehicle has committed, is committing, or is about to commit an offense." Section 46-5-401(1), MCA.

3

¶9 To establish particularized suspicion for a stop, the State must show that the officer possessed (1) objective data and articulable facts from which the officer can make certain reasonable inferences, and (2) a resulting suspicion that the person to be stopped has committed, is committing, or is about to commit an offense. *Brown v. State*, 2009 MT 64, ¶ 20, 349 Mont. 408, 203 P.3d 842. "Whether particularized suspicion exists is evaluated under the totality of the circumstances and requires consideration of the quantity or content of the information available to the officer and the quality or degree of reliability of that information." *City of Missoula v. Moore*, 2011 MT 61, ¶ 16, 360 Mont. 22, 251 P.3d 679 (citing *State v. Rutherford*, 2009 MT 154, ¶ 12, 350 Mont. 403, 208 P.3d 389).

¶10 In the case *sub judice*, the District Court determined that while Cameron did not commit a specific traffic offense, Deputy Robinson had sufficient facts to form a particularized suspicion of wrongdoing to initiate an investigative stop. In so holding, the court relied on our decision in *Weer* wherein this Court determined, based on similar facts, that a particularized suspicion existed. Both the stop in *Weer* and the stop in the instant case occurred at approximately 1:00 a.m. on a Saturday morning. Moreover, just as Cameron's vehicle drifted onto the center line on four separate occasions, the officer following Weer observed Weer's vehicle "swerve twice towards the double-yellow centerline, and then, on the third instance, Weer drove onto the centerline." *Weer*, ¶ 3.

¶11 Cameron argues that the District Court erred as a matter of law when it applied *Weer* to this case because, according to Cameron, *Weer* is both procedurally and factually distinguishable. Cameron contends that *Weer* is procedurally distinguishable because

4

*Weer* involved a civil action to reinstate driving privileges, thus the burden of proof is different from the instant case. Cameron also contends that *Weer* is factually distinguishable because *Weer* twice "swerved" toward the centerline while in this case Cameron only "drifted" toward the center line.

¶12  Rather than relying on *Weer*, Cameron maintains that the court should have relied on *State v. Lafferty*, 1998 MT 247, 291 Mont. 157, 967 P.2d 363, and *Morris v State*, 2001 MT 13, 304 Mont. 114, 18 P.3d 1003, because, according to Cameron, they are both factually similar to his case. However, Cameron ignores the fact that this Court recently declined to rely on *Lafferty* and *Morris* as precedent because those cases utilized flawed approaches to particularized suspicion. *Flynn*, ¶¶ 10, 12.

¶13  In *Lafferty*, an officer stopped the defendant's vehicle after observing the vehicle cross the fog line on the right side of the highway twice and drive on the fog line once. *Lafferty*, ¶ 4. We concluded in *Lafferty* that the officer lacked particularized suspicion based in part on the defendant's testimony that she merely crossed the fog line as she observed the officer's patrol car come up behind her. *Lafferty*, ¶ 17. In *Morris*, an officer stopped the defendant's vehicle after observing the vehicle drift across the line separating the eastbound lanes of traffic. The officer then observed the vehicle drift and touch the fog line on the other side of the lane. *Morris*, ¶ 2. We concluded in *Morris* that the officer lacked particularized suspicion based in part on the defendant's testimony that the road was rutted, and that his usual practice was to attempt to avoid potholes on the road. *Morris* ¶ 10.

5

¶14     In declining to rely on *Lafferty* and *Morris*, we pointed out in *Flynn* that when we first adopted the particularized suspicion standard for vehicular stops, we recognized that the inquiry turned on what *the officer* knew, observed, inferred, and ultimately suspected, not what the defendant later testified to.  *Flynn*, ¶ 12 (citing *State v. Gopher*, 193 Mont. 189, 193-94, 631 P.2d 293, 296 (1981)).  To that end, we stated in *Flynn* that

> [a] defendant's subsequent, valid explanation for conduct that objectively appeared suspicious may affect his or her ultimate liability for a charged offense, but it cannot affect the validity of a stop properly based on particularized suspicion.  The particularized suspicion inquiry is a fact based assessment of the objective quantity, content and reliability of information *available to the officer*.  An officer in the field need not consider every possible innocent explanation or legal exception before concluding that particularized suspicion exists.

*Flynn*, ¶ 11 (internal citations and quotation marks omitted).  Thus, contrary to Cameron's contentions, we conclude that *Lafferty* and *Morris* cannot be applied here, and the District Court was correct not to rely on those cases, but to rely on *Weer* instead.

¶15     We held in *Weer*, that the time of day, the location of the stop, and the petitioner's driving behavior are permissible factors in ascertaining the totality of the circumstances. *Weer*, ¶¶ 10, 19.  We further held that a law enforcement officer need not witness illegal driving or a violation of the traffic code in order to have a particularized suspicion. "[T]he question is not whether any one of [the petitioner's] driving aberrations was itself 'illegal' but rather, whether [the officer] could point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion."  *Weer*, ¶ 10 (quoting *State v. Brander*, 2004 MT 150, ¶ 6, 321 Mont. 484, 92 P.3d 1173).

6

¶16    In the instant case, Deputy Robinson testified at the hearing on Cameron's motion to suppress that in his ten years as a deputy sheriff, he has investigated around 175 DUIs. He also testified that the majority of the DUIs that he has investigated occurred on Friday and Saturday nights between the hours of 10:00 p.m. and 3:00 a.m. "which are high times for driving while under the influence of alcohol." Deputy Robinson stated that when he saw Cameron's vehicle touch the centerline the first time, he did not think it suspicious, but when the vehicle drifted towards the center line a second and third time and stayed on the centerline for 100 yards, he considered the actions dangerous since there were other cars on the road at the time.

¶17    We conclude that based on the totality of the circumstances, Deputy Robinson had sufficient facts to form a particularized suspicion of wrongdoing to initiate an investigative stop. Accordingly, we hold that the District Court did not err when it affirmed the Justice Court's denial of Cameron's Motion to Suppress.

¶18    Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS
/S/ JIM RICE

7