FILED

October 13 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0208

DA 14-0208

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 298N

STATE OF MONTANA,

        Plaintiff and Appellee,

   v.

ROBERT LESTER LUCIER,

        Defendant and Appellant.

| | |
|---|---|
| APPEAL FROM: | District Court of the Nineteenth Judicial District, In and For the County of Lincoln, Cause No. DC-13-52 Honorable James B. Wheelis, Presiding Judge |

    COUNSEL OF RECORD:

        For Appellant:

            Wade Zolynski, Chief Appellate Defender, Kristen L. Larson, Assistant Appellate Defender, Helena, Montana

        For Appellee:

            Timothy C. Fox, Montana Attorney General, Katie F. Schulz, Assistant Attorney General, Helena, Montana

            Bernard Cassidy, Lincoln County Attorney, Libby, Montana

Submitted on Briefs: September 2, 2015
Decided: October 13, 2015

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1    Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent.  Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2    Robert Lester Lucier appeals from the order of the Montana Nineteenth Judicial District, Lincoln County, denying his motion to dismiss all charges filed against him asserting the officer lacked particularized suspicion to stop his truck.  We affirm.

¶3    On Saturday, June 8, 2013, Officer Curtis Meier (Meier) was parked on Highway 93 on the south end of Eureka, Montana.  Meier was on patrol, facing south with a view of the intersection of Highway 93 and Tobacco Road.  Highway 93 and Tobacco Road are both paved, but there was loose gravel at the intersection.  Around 11:00 p.m., Meier observed Robert Lester Lucier (Lucier) approach Highway 93 in his truck from Tobacco Road.  Meier saw Lucier spin his tires, kick up dust and gravel, and accelerate onto Highway 93.  Lucier passed Meier and slowed down after Meier made eye contact with Lucier.  Lucier then made a right turn off of the highway onto First Street and eventually rejoined Highway 93 from Second Street.  Meier drove up Highway 93 and turned onto Second Street, where he met Lucier again in the other lane.  Lucier then rejoined the highway from Second Street.  Meier, having just turned onto Second Street from the highway, made a three-point turn and followed Lucier back onto Highway 93.  As Lucier

drove up Highway 93, he made another right turn onto Third Street. Meier followed, activated his overhead lights, and stopped Lucier. Meier thought Lucier's driving behavior was careless and prompted safety concerns. As a result of the stop, Lucier was charged with one count of DUI, or, in the alternative, one count of DUI per se. Following a hearing, the District Court denied Lucier's motion to dismiss for lack of particularized suspicion. Lucier entered into a plea agreement with the State and reserved his right to appeal the denial of his motion. Lucier now appeals to this Court.

¶4 We review a district court's factual findings of particularized suspicion for clear error and its application of those facts to the law for correctness. *State v. Larson*, 2010 MT 236, ¶ 15, 358 Mont. 156, 243 P.3d 1130.

¶5 Lucier contends on appeal that the District Court erred in concluding Meier possessed sufficient objective data to constitute particularized suspicion to justify the stop. Under Montana law, a peace officer is justified to stop a vehicle "that is observed in circumstances that create a particularized suspicion that the . . . occupant of the vehicle has committed, is committing, or is about to commit an offense." Section 46-5-401(1), MCA. In order to satisfy the requirement of particularized suspicion, the State must show that the officer had "(1) objective data and articulable facts from which an experienced officer can make certain inferences, and (2) a resulting suspicion that the occupant of [the] vehicle is or has been engaged in wrongdoing." *Larson*, ¶ 19 (citing *Brown v. State*, 2009 MT 64, ¶ 20, 349 Mont. 408, 203 P.3d 842). Particularized suspicion does not require certainty; it depends on the totality of the circumstances in which the officer is making the determination. *Larson*, ¶ 19. This Court has in the past

3

held that a peace officer need not witness a specific offense in order to have particularized suspicion. *State v. Cameron*, 2011 MT 276, ¶ 15, 362 Mont. 411, 264 P.3d 1136.

¶6 Meier's observations of Lucier's driving behavior were sufficient for the District Court to reasonably find that particularized suspicion was present. Meier saw Lucier arrive at the intersection on a Saturday night at 11:00 p.m. and rev the truck's engine, which caused the tires to spin and upended dust and gravel from the road. After Lucier accelerated onto to the highway, Lucier and Meier made eye contact, at which point Lucier slowed down and made an immediate right turn. Furthermore, Meier did not activate his lights or otherwise try to stop Lucier until Lucier made two additional turns, which made Meier suspicious that Lucier was trying to avoid being stopped. Additionally, Lucier's behavior prompted safety concerns and left Meier with an impression of careless driving. In *Larson*, we found similar driving behavior to be sufficient for particularized suspicion: the defendant in *Larson* revved his engine, screeched his wheels, and then drove across a busy intersection in front of two police officers with activated light bars. *Larson*, ¶ 23. Considering the totality of the circumstances here, the facts similar to *Larson*, and the additional evasive behavior in this case, we are unable to conclude that it was clear error by the District Court to find that Meier had particularized suspicion to stop Lucier. The standard for particularized suspicion only requires that Lucier's driving behavior reasonably lead Meier to suspect that Lucier was or had been engaging in wrongdoing. *Larson*, ¶ 19. We find that the facts support such a finding, and the District Court correctly applied the law to the facts.

4

¶7 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents neither constitutional issues nor issues of first impression, and does not establish new precedent or modify existing precedent. Therefore, it is the opinion of the Court that this case would not otherwise be of future guidance for citation purposes to the citizens of Montana.

¶8 Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ JIM RICE

Justice Michael E Wheat, dissenting.

¶9 In my view the Court is wrong to affirm the District Court's denial of Lucier's motion to dismiss for lack of particularized suspicion because the evidence gathered was not sufficient to justify a stop. Therefore, I respectfully dissent.

¶10 "Whether particularized suspicion exists is evaluated under the totality of the circumstances and requires consideration of the quantity or content of the information available to the officer and the quality or degree of reliability of that information." *City*

5

*of Missoula v. Moore*, 2011 MT 61, ¶ 16, 360 Mont. 22, 251 P.3d 679 (citing *State v. Rutherford*, 2009 MT 154, ¶ 12, 350 Mont. 403, 208 P.3d 389). While I find that the evidence relied upon for the stop of Lucier to be reliable, I believe it falls short of the quantity necessary to substantiate a particularized suspicion that the driver of the vehicle "has committed, is committing, or is about to commit an offense." Section 46-5-401(1), MCA.

¶11 In this case, the State relies on the following to establish a particularized suspicion based upon a "totality of the circumstances":

    1. A vehicle spins its wheels in gravel while entering the highway, and,

    2. The driver then makes a series of "evasive" legal turns, not speeding or violating any other traffic laws.

¶12 There is no bright line established to demonstrate a clear case of particularized suspicion, which is the reason we rely upon the totality of the circumstances in each case to determine sufficiency. Because I am arguing that the determination in this case falls short, I want to review cases on both sides of this standard to illustrate what the Court currently views as sufficient.

¶13 First, cases where the facts were sufficient to establish a particularized suspicion to justify a stop. In *State v. Cameron*, 2011 MT 276, ¶ 3, 362 Mont. 411, 264 P.3d 1136, Cameron was observed drifting onto the centerline in his vehicle late at night. The officer followed Cameron for five miles, observed Cameron drift onto the center line four times, including one stretch where Cameron drove the centerline for 100 yards. We concluded that the officer had sufficient facts to form a particularized suspicion to initiate

6

a stop. In *State v. Waite*, 2006 MT 216, ¶ 4, 333 Mont. 365, 143 P.3d 116, we found the stop justified because the officer followed the vehicle, observed the vehicle swerving in its lane, following too close on another vehicle, crossing the fog line, and swerving across the centerline of two lanes. We concluded Waite's actions were sufficient to establish particularized suspicion for the stop.

¶14    On the other side of the equation, we have found a lack of information to justify stops made in several cases. I refer to two of those cases with facts similar to *Lucier*. First, in *State v. Reynolds*, 272 Mont. 46, 51, 899 P.2d 540, 543 (1995), the officer observed that the driver was "bordering on travelling too fast" and then watched the driver hesitate and wait too long at an intersection after seeing the officer. We concluded that under the totality of the circumstances that the "possible" traffic violation combined with waiting too long at a stop sign did not support a particularized suspicion to justify the traffic stop. Next, in *State v. Fisher*, 2002 MT 335, ¶¶ 3-5, 21, 313 Mont. 274, 60 P.3d 1004, we did not find support for a particularized suspicion when the defendant's attempts to avoid a police officer included legal and ordinary turns while maintaining appropriate speed. The driver in *Fisher* made several evasive turns and this Court concluded that the driver *was* attempting to elude or avoid the officer but we did not find sufficient information to support particularized suspicion. Both of these cases include activity that is suspicious and probably could lead to a conclusion of a particularized suspicion under the totality of the circumstances; but each case lacked enough quantity of evidence necessary to justify a stop.

¶15    I believe Lucier's case is more similar to *Reynolds* and *Fisher*.  Lucier's initial act of spinning his tires in gravel while driving onto Highway 93,  (a turn many of our State's citizens have made with similar spinning results) fails to meet the careless driving standard as there was no evidence that Lucier fishtailed, swerved, left his lane, or that he was speeding.  Lucier reduced his acceleration when he looked over and saw the officer; a typical reaction for many drivers when they see a police officer.  None of Lucier's actions driving onto Highway 93 appear to be careless or criminal.  After this, Lucier initiated a series of turns which could be considered suspicious.  However, the turns are information that contribute to the totality of the circumstances but need additional support prior to a conclusion of particularized suspicion.  Because of the unlikelihood that Lucier could mount an escape with the officer so close, it appears there was still opportunity to gather additional evidence to establish a proper particularized suspicion.  This was the action taken in both *Cameron* and *Waite*, where the officers pursued the drivers for a period of time while gathering evidence of impaired driving.  However, similar to *Reynolds* and *Fisher*, I believe the officer in this case made a judgment based upon too little evidence and failed to establish sufficient information to justify the stop.

¶16    In my view, the District Court's conclusion that the particularized suspicion was supported is incorrect, because the total *quantity* of evidence in this case is not sufficient to establish that standard under the totality of the circumstances.  *Moore*, ¶ 16.  I dissent here because the greater hazard of the majority's decision is to move the goalposts further in favor of the State, making it easier to establish reasons to unfairly stop our citizens in their daily lives.  Ultimately, I believe that upholding the quantity of evidence in this case

8

as sufficient lowers this Court's established standard for particularized suspicion and reduces our citizen's right to be free from unwarranted intrusion by law enforcement.


/S/ MICHAEL E WHEAT


Justice Laurie McKinnon joins in the dissenting Opinion of Justice Michael E Wheat.


/S/ LAURIE McKINNON