No. 05-213

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 216

STATE OF MONTANA,

   Plaintiff and Appellant,

 v.

NIKKI FAYE WAITE,

   Defendant and Respondent.

APPEAL FROM:  The District Court of the Fourth Judicial District,
       In and For the County of Missoula, Cause No. DC 2004-446,
       Honorable John S. Henson, Presiding Judge

COUNSEL OF RECORD:

   For Appellant:

      Honorable Mike McGrath, Attorney General; Ilka Becker,
      Assistant Attorney General, Helena, Montana

      Fred Van Valkenburg, County Attorney; Karen S. Townsend,
      Deputy County Attorney, Missoula, Montana

   For Respondent:

      Mark Anderson, Public Defender, Missoula, Montana

           Submitted on Briefs: December 14, 2005

               Decided: September 6, 2006

Filed:

    _____
          Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 The State of Montana appeals from an order of the Fourth Judicial District Court, Missoula County, holding there was not particularized suspicion for the investigatory stop of Nikki Faye Waite's (Waite) vehicle. We reverse and remand.

¶2 We consider the following issue on appeal:

¶3 Did the District Court err in granting Waite's motion to suppress based on its determination that the officer lacked particularized suspicion to justify an investigatory stop?

## BACKGROUND

¶4 On October 19, 2003, at approximately 2:30 a.m., Montana Highway Patrol Officer James Kitchin (Kitchin) patrolled north on U.S. Highway 93. He observed a passenger vehicle, later determined to be driven by Waite, following a pickup truck traveling south. Kitchin saw Waite's car swerve across the center line of the two southbound lanes. He turned his video camera on, and followed her for several miles. Waite's vehicle drifted across the center line of the two southbound lanes, crossed the fog line, and followed the pickup truck in front of her too closely. Based on his observations, Kitchin activated his lights and began an investigatory traffic stop near Chief Looking Glass Road and U.S. Highway 93. The pickup truck and passenger vehicle both stopped.

¶5 Kitchin approached the driver's door and informed Waite of the reason for the stop. Kitchin noticed that Waite's eyes were bloodshot and her speech was slurred. Kitchin asked Waite for her license, registration, and proof of insurance. Waite handed

him proof of insurance, but was unable to locate her driver's license or registration. When Kitchin asked Waite to step from her vehicle, she told him that the driver's side door did not open. Kitchin instructed Waite to exit from the passenger side door, which she also said did not open. Waite then opened the driver's side door and exited the vehicle. As Waite stepped out, Kitchin noticed the odor of alcohol coming from her. Waite had to lean on her car for balance, and stated that she could not stand due to two broken feet. Kitchin conducted a Horizontal Gaze Nystagmus (HGN) test on Waite and observed lack of smooth pursuit and nystagmus at maximum deviation. Kitchin placed Waite in his patrol car, and found that her license was revoked and that she had two prior DUI convictions.

¶6     The State charged Waite with driving a motor vehicle while under the influence of alcohol (DUI), in violation of § 61-8-401, MCA (2003), and driving while license suspended or revoked, in violation of § 61-5-212, MCA (2003).

¶7     Waite appeared in Justice Court with counsel and moved to suppress the evidence, asserting there were insufficient facts to support a particularized suspicion she was committing an offense, and therefore, Kitchin's stop was invalid. The Justice of the Peace denied Waite's motion based on Kitchin's sworn testimony that Waite was continuously swerving, crossing the center line and fog line, and following too closely. In a Justice Court trial, a jury found Waite guilty of DUI. She appealed to the Fourth Judicial District Court, and again filed a motion to suppress based on the officer's lack of particularized suspicion.

3

¶8 The District Court noted that, from its review of Kitchin's video, Waite was driving erratically and following the pickup truck too closely, in violation of § 61-8-329, MCA (2003). However, the court granted the motion to suppress, concluding that Waite's swerving within a lane and touching the fog line was insufficient to establish particularized suspicion, and that her action of following too closely could not be considered in the particularized suspicion analysis because Kitchin did not cite Waite with that traffic violation or note it in his report. The State appeals.

## STANDARD OF REVIEW

¶9 We review a District Court's grant of a motion to suppress based on a finding of no particularized suspicion to determine whether the court's findings of fact are clearly erroneous and whether its conclusions of law are correct. *State v. Schulke*, 2005 MT 77, ¶ 10, 326 Mont. 390, ¶ 10, 109 P.3d 744, ¶ 10 (citation omitted).

## DISCUSSION

¶10 The State contends that the District Court erred when it granted Waite's motion to suppress based on its conclusion there was not particularized suspicion for the stop. The State argues that Waite's erratic driving was sufficient to establish particularized suspicion, and, further, that the District Court erred in concluding that Kitchin's failure to cite Waite for following too closely, or note the infraction in his report, precludes consideration of this evidence in the particularized suspicion analysis. In response, Waite contends that simply swerving within a lane and touching the fog line, without a citation

4

for some other driving offense, is insufficient to support a finding of particularized suspicion for a traffic stop.

¶11 Pursuant to § 46-5-401(1), MCA, "a peace officer may stop any person or vehicle that is observed in circumstances that create a particularized suspicion that the person or occupant of the vehicle has committed, is committing, or is about to commit an offense." In *State v. Gopher*, 193 Mont. 189, 631 P.2d 293 (1981), we adopted the two-part test enunciated by the United States Supreme Court in *United States v. Cortez*, 449 U.S. 411, 101 S. Ct. 690 (1981), to evaluate whether a police officer had a particularized suspicion to make an investigatory stop. Under *Gopher*, the State has the burden to show: (1) objective data from which an experienced officer can make certain inferences; and (2) a resulting suspicion that the occupant of a certain vehicle is or has been engaged in wrongdoing or was a witness to criminal activity. *Gopher,* 193 Mont. at 194, 631 P.2d at 296. Whether particularized suspicion exists is a question of fact that depends on the totality of the circumstances. *State v. Otto*, 2004 MT 338, ¶ 15, 324 Mont. 217, ¶ 15, 102 P.3d 522, ¶ 15.

¶12 The District Court reviewed the video of Waite's vehicle and stated:

> [I]t is notable that Defendant's driving is visibly erratic, the car swerving repeatedly within the lane of traffic, appearing to touch or cross the center line on at least three occasions, as well as touching the fog line within the right lane. The video also shows that Defendant is following her companion's vehicle, a pickup truck, extremely closely for nearly the entire duration of the video . . . . It certainly appears from the camera's view that Defendant is following too closely, in violation of § 61-8-329, MCA.

5

¶13 The State correctly argues that under *Hulse v. State*, 1998 MT 108, ¶ 39, 289 Mont. 1, ¶ 39, 961 P.2d 75, ¶ 39, "erratic driving" can constitute the basis for a particularized suspicion to stop a vehicle. In *Hulse*, we discussed erratic driving as including "driving all over the road, crossing the center line and the fog line, weaving in and out of traffic, or braking for green lights . . . ." *Hulse*, ¶ 39.

¶14 Kitchin's failure to cite Waite for traffic violations other than DUI and driving while license suspended or revoked does not prohibit consideration of such violations or conduct in determining the existence of particularized suspicion. We note that it is not necessary for an officer to observe a moving violation to establish particularized suspicion to justify a traffic stop. *State v. Brander*, 2004 MT 150, ¶ 6, 321 Mont. 484, ¶ 6, 92 P.3d 1173, ¶ 6. Further, "we do not require an investigating officer to identify a particular statutory violation and/or cite a defendant for a moving violation to establish a particularized suspicion." *Schulke*, ¶ 18. In *Schulke*, we found that particularized suspicion existed when the defendant drove at 2:30 a.m., crossed the center line of the fast and slow lanes of traffic, and briefly drove, in part, in a lane reserved for oncoming traffic. *Schulke*, ¶¶ 14-15. We determined that the fact the defendant was not cited for improper lane travel, in violation of § 61-8-328, MCA, did not eliminate that evidence for purposes of determining the existence of particularized suspicion for the traffic stop. *Schulke*, ¶ 18.

¶15 The District Court erred by concluding that, because Waite was not cited for the offense, her actions of following too closely could not be considered in determining the

6

existence of particularized suspicion. Waite's following too closely, in violation of § 61-8-329, MCA (2003), contributed to the officer's objective observations even though no citation was issued.

¶16 Similarly, the court erred in concluding that Waite's actions could not be considered because Kitchin failed to note them in his report. Kitchin testified about his observation of Waite's following too closely, and his failure to include this observation in his report bears solely upon the credibility of his testimony, not to the availability, as a matter of law, of this evidence for purposes of a particularized suspicion determination. Here, of course, the District Court itself observed Waite's actions on the videotape, and the officer's credibility was not an issue.

¶17 Waite contends that the facts of this case are analogous to several cases in which this Court held that questionable driving behaviors observed by police officers were insufficient to allow for particularized suspicion to justify a traffic stop. *See State v. Lafferty*, 1998 MT 247, 291 Mont. 157, 967 P.2d 363 (crossing the fog line twice and driving on it once was insufficient, without other relevant circumstances, for particularized suspicion); *Morris v. State,* 2001 MT 13, 304 Mont. 114, 18 P.3d 1003 (merely "drifting" over the fog line with no other evidence of speeding or erratic driving insufficient for particularized suspicion); *State v. Reynolds,* 272 Mont. 46, 899 P.2d 540 (1995) (driving which was "bordering on traveling too fast" and waiting too long at an intersection with no traffic laws broken insufficient for particularized suspicion). However, there are additional facts in this case which distinguish it from the above cases.

Here, Waite's crossing of the fog line was only one of several facts giving rise to the officer's particularized suspicion. Kitchin also observed Waite's vehicle continuously swerving within the lane, crossing over the center line twice, crossing over the fog line numerous times, and following too closely, all of this occurring late at night. Under the totality of the circumstances, these facts are sufficient to establish a particularized suspicion.

## CONCLUSION

¶18 The District Court erroneously concluded that, while sufficient evidence existed for the officer to cite Waite with following too closely, the fact that the officer did not issue a citation or note the infraction in his report precluded that evidence from the particularized suspicion analysis. Waite's erratic driving, including her following too closely, was sufficient to establish particularized suspicion for the stop.

¶19 Reversed and remanded.

/S/ JIM RICE

We concur:

/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS