DA 08-0294

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2009 MT 154

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

DARYL LEE RUTHERFORD,

      Defendant and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. BDC-2007-122
Honorable Jeffrey M. Sherlock, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Charles E. Petaja, Attorney at Law, Helena, Montana

      For Appellee:

      Hon. Steve Bullock, Montana Attorney General;
Matthew T. Cochenour, Assistant Attorney General, Helena, Montana

      Leo Gallagher, Lewis and Clark County Attorney, Michael Menahan,
Deputy County Attorney, Helena, Montana

          Submitted on Briefs:  March 25, 2009

                   Decided:  May 5, 2009

Filed:

_____
                 Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1      Daryl Lee Rutherford pled guilty in the First Judicial District Court, Lewis and Clark County, to felony driving under the influence of alcohol (DUI), driving without liability insurance, and operating a motor vehicle without a valid driver's license. The District Court sentenced Rutherford and entered judgment. Rutherford appeals on an issue he reserved when he entered his guilty plea. We affirm.

¶2      The issue is whether the District Court erred in denying Rutherford's combined motion to suppress and to dismiss for lack of particularized suspicion justifying an investigative stop.

BACKGROUND

¶3      Shortly after 9 p.m. on April 14, 2007, Tyler Tobel was driving west on Highway 12 from Townsend, Montana, to East Helena, Montana, with Shari-Rochael Kelly riding as a passenger. Near the Silos Bar, a maroon Dodge Dakota truck pulled out in front of them, causing them to slow down. As Kelly and Tobel followed the truck toward East Helena, they observed the driver repeatedly swerve across both the yellow center line and the white fog line of the highway. Kelly also observed the driver speeding up and slowing down and flashing his truck's lights from dim to bright and back again.

¶4      Kelly called 911 to report a suspected drunk driver as she and Tobel followed the Dodge Dakota toward East Helena. She gave the 911 dispatcher her full name and her cell phone number and described the silver Nissan vehicle in which she was riding. She also described the truck as a maroon 4-door Dodge Ram, which description she later

2

corrected to Dodge Dakota, with a grille guard on the front. She reported that the truck's license plate number began with a 5 and ended with 48, but she was not able to provide the dispatcher with the entire license plate number because a trailer hitch hid the middle numbers on the plate. About three minutes into the phone call, she told the dispatcher that the driver of the truck had slowed his vehicle considerably, pulled off to the side of the road, and continued to drive on the side of the road. Tobel and Kelly passed the vehicle, but continued to observe it, and Kelly stayed on the line with the 911 dispatcher as they traveled into East Helena.

¶5 The dispatcher contacted East Helena police officer Brian Morgan and informed him that a possible drunk driver was travelling west toward East Helena in a maroon Dodge Dakota. Officer Morgan positioned his patrol vehicle just off the highway on the east side of East Helena. Soon afterward, he observed Tobel's and Kelly's silver Nissan entering East Helena, followed by a maroon Dodge Dakota. At the same time, the dispatcher, still on the telephone with Kelly, informed Morgan that Kelly had spotted his patrol vehicle. Morgan pulled in behind the Dodge Dakota, and Kelly confirmed to the dispatcher that Morgan was following the correct vehicle.

¶6 Morgan followed the Dodge Dakota for three to four blocks before stopping it. Morgan told Rutherford, the driver and sole occupant of the truck, that he had stopped him because the truck's rear license plate was obstructed and because of a citizen's complaint. Morgan noticed a strong odor of alcohol on Rutherford. Rutherford's speech was slurred, he had difficulty answering Morgan's questions, and he fumbled with his

3

wallet when retrieving his driver's license. Based on his observations, Morgan arrested Rutherford.

¶7 The State of Montana filed an Information charging Rutherford with DUI (4th or subsequent offense), driving without liability insurance, operating a motor vehicle without a valid driver's license, criminal possession of dangerous drugs (marijuana), and criminal possession of drug paraphernalia. Rutherford filed a combined motion to suppress and dismiss, on grounds that Morgan did not have the requisite particularized suspicion to make an investigative stop. The District Court held a hearing on that motion, at which Morgan, Rutherford, and Kelly testified and the State introduced an audio tape of Kelly's 911 call into evidence. After listening to the tape and reviewing the parties' briefs, the District Court denied Rutherford's motion.

¶8 Rutherford later agreed to plead guilty to DUI, driving without liability insurance, and operating a motor vehicle without a valid driver's license, and the State agreed to dismiss the other two charges it had filed against him. Rutherford reserved the right to appeal the court's denial of his motion to dismiss and suppress evidence, and the parties agreed his sentence would be stayed pending appeal, subject to conditions. The District Court accepted the plea agreement, sentenced Rutherford, and entered judgment accordingly.

STANDARDS OF REVIEW

¶9 We review the denial of a motion to suppress evidence to determine whether the district court's findings of fact are clearly erroneous and whether the court correctly

4

applied those findings as a matter of law. *State v. Elison*, 2000 MT 288, ¶ 12, 302 Mont. 228, 14 P.3d 456. We review for clear error a finding that an officer had particularized suspicion to conduct an investigative stop. *State v. Farabee*, 2000 MT 265, ¶ 11, 302 Mont. 29, 22 P.3d 175.

## DISCUSSION

¶10 *Did the District Court err in denying Rutherford's combined motion to suppress and to dismiss for lack of particularized suspicion justifying an investigative stop?*

¶11 Both the United States Constitution and the Montana Constitution prohibit unreasonable searches and seizures. U.S. Const. amend. IV; Mont. Const. art. II, § 11. These protections apply to investigative stops of vehicles. *State v. Gopher*, 193 Mont. 189, 194, 631 P.2d 293, 296 (1981). An investigative stop is valid if the officer possessed particularized suspicion that the vehicle's occupant "has committed, is committing, or is about to commit an offense." Section 46-5-401(1), MCA. To establish particularized suspicion, the State must show both objective data from which an experienced officer can make certain inferences, and a resulting suspicion that the occupant of the vehicle is or has been engaged in wrongdoing. *Elison*, ¶ 15.

¶12 Whether particularized suspicion supports an investigative stop is a question of fact which must be evaluated under the totality of the circumstances. When evaluating the totality of the circumstances, a court considers the quantity, or content, of the information available to the officer and the quality, or degree of reliability, of that information. *Elison*, ¶ 16.

¶13 Rutherford claims the matter of the obstructed license plate was a pretext for

5

stopping him. He argues the alleged obstructed license plate cannot provide a basis for the stop because the trailer hitch was factory-installed and because he was not cited for that offense. In relation to this argument, we note Rutherford does not deny that the trailer hitch obstructed the license plate. Further, he has provided no authority to support the proposition that a factory-installed trailer hitch cannot lead to an obstructed license plate in violation of § 61-3-301, MCA.

¶14 Rutherford distinguishes this case from *State v. Waite*, 2006 MT 216, ¶ 14, 333 Mont. 365, 143 P.3d 116, in which we held that an officer's failure to cite a driver for the underlying traffic violation supporting the investigative stop did not bar the use of such evidence in a particularized suspicion determination. In *Waite*, the officer observed erratic driving including following too closely; the officer effectuated a traffic stop which escalated into a DUI stop, and ultimately did not cite the driver for any traffic violations other than DUI and driving while his license was suspended or revoked. It is true that this case is distinguishable from *Waite* on the basis that, there, the erratic driving was observed by the officer, not a citizen informant. However, nothing in *Waite* indicates that violations observed directly by the arresting officer are the only ones which may be considered in a particularized suspicion determination.

¶15 In *State v. Pratt*, 286 Mont. 156, 162, 951 P.2d 37, 41 (1997), we reiterated our previous holding that an arresting officer may rely on information conveyed by a reliable third party in forming the basis for a particularized suspicion to justify an investigative stop. We adopted a three-part test for assessing the reliability of a citizen informant's

report: (1) whether the informant identified himself or herself to the authorities; (2) whether the informant's report is based on personal observations; and (3) whether the officer's observations corroborated the informant's information. *Pratt*, 286 Mont. at 164-65, 951 P.2d at 42-43. We apply that test here.

¶16 Rutherford concedes the first prong of the *Pratt* test was met. He contends, however, that although Kelly identified herself and her cell phone number to the 911 dispatcher, she did not provide enough information to satisfy the remaining two elements of the *Pratt* test. In this regard, Rutherford's argument depends in large part on limiting the information considered to those facts given to Morgan. In applying the *Pratt* test to situations in which an officer is acting upon a tip relayed from dispatch, however, we look beyond the information given to the investigating officer to include the information known to the dispatching officer. *See State v. Hall*, 2004 MT 106, ¶ 15, 321 Mont. 78, 88 P.3d 1273.

¶17 Rutherford cites *State v. Lee*, 282 Mont. 391, 396, 938 P.2d 637, 640 (1997), as authority that vague information from a citizen informant, with no other objective data, does not support a particularized suspicion of wrongdoing. The anonymous informant in *Lee* called 911 and reported that she believed Lee was speeding and under the influence of alcohol, but the informant did not state whether she had seen Lee drinking or driving or speeding. *Lee*, 282 Mont. at 395, 938 P.2d at 640. The circumstances of *Lee* thus differ from those in the present case in two important respects: the degree of identification provided by the informant, and the foundation given for the information

7

provided by the informant. Here, not only did informant Kelly give her full name, cell phone number, location, and vehicle description, but she described in detail her specific observations of Rutherford's driving, over the course of some 12 minutes of time.

¶18 Rutherford further contends that, because Morgan did not observe any illegal activity by him, Kelly's report was not sufficiently corroborated. Even discounting the matter of the obstructed license plate, that conclusion does not follow. We have not required that an officer personally observe illegal activity. *See Elison*, ¶ 20. In *State v. Roberts*, 1999 MT 59, ¶ 26, 293 Mont. 476, 977 P.2d 974, *quoting Pratt*, 286 Mont. at 165, 951 P.2d at 43, we said "[c]orroboration occurs, under the third *Pratt* factor, when the officer either observes illegal activity or finds the person, the vehicle, or the vehicle's occupants 'substantially as described by the informant.'" Here, Morgan observed the make, model, and color of truck Kelly reported, with an obstructed licensed plate, and in the location and heading in the direction Kelly had reported.

¶19 In summary, the evidence presented to the District Court established that Kelly identified herself to law enforcement, her report of Rutherford's swerving, light-flashing, slowing down and speeding up, and driving on the side of the road was based on her personal observations, and Morgan corroborated her information about the appearance, make, location, and direction of travel of the Dodge Dakota. The content of the information provided by Kelly was detailed and specific, and the information she provided had a high degree of reliability because Kelly identified herself with particularity. All three elements of the *Pratt* test were satisfied. Kelly provided objective

8

data from which an experienced officer could infer that the driver of the Dodge Dakota was DUI, and Morgan had a resulting suspicion that the driver was engaged in wrongdoing.

¶20 We hold the District Court's finding that Morgan had particularized suspicion to stop Rutherford was not clearly erroneous, so that the court did not err in denying Rutherford's combined motion to suppress and to dismiss for lack of particularized suspicion justifying an investigative stop.

¶21 Affirmed.

/S/ MIKE McGRATH

We concur:

/S/ PATRICIA COTTER
/S/ JIM RICE
/S/ BRIAN MORRIS

Justice James C. Nelson concurs.

¶22 I concur in the Court's Opinion. I write separately to address two points.

¶23 First, ¶ 11 of the Court's Opinion cites correctly the test which we set out in *State v. Gopher*, 193 Mont. 189, 631 P.2d 293 (1981). However, we recently refined that test with respect to the "experienced officer" prong. In *Brown v. State*, 2009 MT 64, 349

9

Mont. 408, 203 P.3d 842, after tracing the history of the particularized suspicion test, we adopted the following standard:

> [W]e hold that, henceforth, for a peace officer to have particularized suspicion or reasonable grounds for an investigatory stop, the peace officer must be possessed of: (1) objective data and articulable facts from which he or she can make certain reasonable inferences; and (2) a resulting suspicion that the person to be stopped has committed, is committing, or is about to commit an offense. While a peace officer's experience and training may be a factor in determining what sort of reasonable inferences he or she is entitled to make from his or her objective observations, experience and training will not necessarily be the defining element of the test. For example, a rookie peace officer on his or her first patrol may well be entitled to make an investigatory stop of a vehicle at 2:00 a.m. that is driving slowly, without lights, and is weaving across the center line and fog lines. That same peace officer, however, might not be entitled to make reasonable inferences resulting in particularized suspicion or reasonable grounds to stop under circumstances which are demonstrably beyond his or her training or experience. The courts will look to the facts and to the totality of the circumstances of each case.

*Brown*, ¶ 20; *accord State v. Cybulski*, 2009 MT 70, ¶¶ 24-26, 349 Mont. 429, 204 P.3d 7. Applying the *Brown* test here, I agree that, based on the totality of circumstances of this case, Officer Morgan had sufficient particularized suspicion to effect the stop of Rutherford's pickup. That said, I turn to my next point.

¶24 As part of Officer Morgan's particularized suspicion, he testified that he relied secondarily on the fact that Rutherford's rear license plate was partially obscured by the vehicle's trailer hitch. The District Court judge referred to this justification as "somewhat of a red herring." Indeed, this Court has discounted this evidence as well. Opinion, ¶ 18. I agree.

¶25 However, and more to the point, I cannot conclude that the obscured license plate provided any particularized suspicion whatsoever for the stop of Rutherford's vehicle. If we allow peace officers to stop the vehicles of Montanans for having rear license plates partially obscured by trailer hitches—or worse, wholly obscured by snow, mud, dust and dirt—we will be facilitating a significant abuse of drivers' rights of individual privacy and freedom from unreasonable searches and seizures.

¶26 In saying this, I am cognizant of the State's arguments on brief and its citation to § 61-3-301, MCA,[1] and to our decision in *State v. Lacasella*, 2002 MT 326, 313 Mont. 185, 60 P.3d 975. Section 61-3-301, MCA, requires that vehicle license plates be "conspicuously displayed." Section 61-3-301(1)(a), MCA. "Conspicuously displayed" is defined by the statute to require that the vehicle license plates be "obviously visible and firmly attached to" the bumpers or in another clearly visible location. Section 61-3-301(4), MCA. In *Lacasella*, we cited to the statute and concluded that this law "simply requires that license plates be visible from both the front and the rear of a vehicle." *Lacasella*, ¶ 16. We specifically did not address the question of whether the statute was violated if an otherwise "visible" license plate was "obscured." *Lacasella*, ¶ 18.

¶27 Here, it is undisputed that Rutherford's rear license plate was "conspicuously displayed" and "clearly visible." There is nothing in § 61-3-301, MCA, or in *Lacasella*

---

[1] I refer to the 2005 version of the Montana Code, inasmuch as Rutherford's offense was committed on April 14, 2007, and before the effective date of the 2007 amendments to § 61-3-301, MCA. *See* Complier's Comments to the 2007 version of this statute.

that leads me to the conclusion that an otherwise "conspicuously displayed" and "clearly visible" license plate ceases to be that if the numbers are "obscured" by a trailer hitch, mud, snow, dust, or dirt. If that is the case, then few drivers in this State will be free from a peace officer's discretionary investigatory stop, given the number of vehicles with trailer hitches and given weather, seasonal road conditions, and the number of dirt and farm roads on which we all drive. "Obscured" license plates are a fact of life; we all have them at one time or another. In my view, a peace officer effecting an investigatory stop needs more particularized suspicion of criminal activity than that afforded by an "obscured" license plate which is otherwise attached to the vehicle in accordance with § 61-3-301, MCA.

¶28 Since Officer Morgan had sufficient particularized suspicion, notwithstanding that Rutherford's license plate numbers were "partially obscured," I agree that his stop was conducted in accordance with the law.

¶29 I concur.

/S/ JAMES C. NELSON