DA 12-0055

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 32

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

MARK ANDREW HALDANE,

      Defendant and Appellant.


APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DC 11-152A
Honorable Holly Brown, Presiding Judge


COUNSEL OF RECORD:

      For Appellant:

          Wade Zolynski, Chief Appellate Defender, Jennifer A. Hurley, Assistant
Appellate Defender, Helena, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Pamela P. Collins, Assistant
Attorney General, Helena, Montana

          Kyla C. Murray, City Prosecutor, City of Bozeman, Bozeman, Montana


Submitted on Briefs:   December 4, 2012
Decided:  February 12, 2013


Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1      Mark Andrew Haldane (Haldane) was convicted of driving under the influence of alcohol (DUI) following a jury trial in the City of Bozeman Municipal Court.  He appealed to the District Court.  Haldane appeals from an order of Montana's Eighteenth Judicial District Court, Gallatin County, affirming the Municipal Court's denial of Haldane's motion to suppress that had challenged the particularized suspicion to stop Haldane based on the obstruction of a license plate.  Haldane also asserts that his counsel rendered ineffective assistance by failing to elicit certain testimony from the officers at trial and not renewing the motion to suppress once those facts were elicited.  Lastly, Haldane challenges his sentence on the grounds that it violated his due process rights because it was based on his indigency.  We affirm the District Court's denial of Haldane's motion to dismiss, reject his ineffective assistance of counsel arguments, vacate his sentence on due process grounds, and remand for entry of a new sentence that comports with due process concerns.

## ISSUES

¶2      Haldane raises the following three issues on appeal:

¶3      1.   Was Haldane's constitutional right to be free from unreasonable seizure violated when officers stopped his car based on an obstruction of his temporary registration permit by snow and a trailer hitch?

¶4      2.   Did Haldane's counsel render ineffective assistance by failing to properly investigate and elicit testimony at the suppression hearing that the officers could in fact

2

read the temporary permit, and later for failing to renew the motion to suppress once the officer testified at trial that he could read the permit?

¶5 3. Did Haldane's sentence violate due process because it was based on indigency?

**FACTUAL AND PROCEDURAL BACKGROUND**

¶6 On January 12, 2011, City of Bozeman police officers Lindsay Shepherd and Hal Richardson executed a traffic stop of a car driven by Haldane. Officer Richardson was a field training officer and was assigned to supervise Officer Shepherd, who was in the second phase of field training at the time of the stop. Officer Shepherd was driving and Officer Richardson was in the passenger seat of the patrol car. The officers encountered Haldane's vehicle as it was stopped at a red light at the intersection of 23rd Street and Main Street in Bozeman, Montana. When the officers pulled up behind Haldane's vehicle, they noticed that its license plate was obstructed by snow and a trailer hitch. The officers observed that snow had built up at the base of the license plate well, which prevented the officers from viewing the digits on Haldane's temporary license plate. It was not actively snowing and had not snowed for at least a day prior to the traffic stop.

¶7 Police officers use the license plate number of a vehicle to check its registration using the Mobile Data Terminal (MDT) in their patrol vehicles. The MDT allows officers to connect to the dispatch center. Running license plate numbers through the MDT provides officers with information about the vehicle and its owner, and is commonly used to verify whether a vehicle's registration is current.

¶8 Haldane was driving a black Ford Explorer at the time of the stop. Haldane had purchased the vehicle two days prior to the stop from a local auto dealer. The auto dealer

3

provided Haldane with a temporary registration and affixed a temporary plate. The ball trailer hitch was attached to the vehicle at the time of purchase. Haldane claims that he was unaware that his temporary plate was obstructed in any way.

¶9 Officer Shepherd initiated the traffic stop as Haldane turned onto St. Estephe Drive. Officer Shepherd approached the vehicle and asked Haldane for his driver's license, registration, and proof of insurance. Haldane was only able to produce his driver's license. Officer Richardson noticed that Haldane was "fervently" smoking a cigarette and had red, bloodshot eyes. Both officers returned to the patrol car to verify Haldane's license. When the officers re-approached Haldane's vehicle to return his license, Officer Richardson asked Haldane how many drinks he had that night. According to Officer Richardson, Haldane slurred and responded, "two to three beers." Officer Richardson conducted field sobriety tests and noted multiple signs of impairment during the maneuvers, including Haldane's inability to properly recite the alphabet. Haldane refused to submit to a breathalyzer test and became belligerent.

¶10 Haldane was arrested and charged with the following three offenses: (1) DUI in violation of § 61-8-401, MCA; (2) Driving with an Obstructed Plate in violation of § 61-3-301, MCA; and (3) Operating a Motor Vehicle without Liability Insurance in violation of § 61-6-301, MCA. On May 5, 2011, Haldane filed a motion in Municipal Court to suppress evidence based on a lack of particularized suspicion to conduct the investigative stop. On May 26, 2011, the Municipal Court held a hearing on the motion to suppress. Officers Shepherd and Richardson testified at the hearing. Neither officer was able to recall how Haldane's registration was verified.

4

¶11 Following the evidentiary hearing, the Municipal Court issued an order on June 1, 2011, denying Haldane's motion to suppress. On June 21, 2011, Haldane was found guilty of DUI, first offense, in violation of § 61-8-401, MCA, following a jury trial. The State chose not to pursue the obstructed plates and no insurance charges against Haldane. At trial, both officers testified that the license plate was obstructed by snow and the ball hitch. Officer Richardson recalled that once he approached the vehicle and changed his vantage point, he was able to read the numbers on the license plate.

¶12 On June 29, 2011, the Municipal Court sentenced Haldane for the DUI offense. Originally, the Municipal Court discussed sentencing Haldane to six months in the Gallatin County Detention Center with all but three days suspended, ordering fines totaling $935, and imposing other sentencing conditions. Later in the sentencing hearing, the length of Haldane's suspended sentence was doubled to one year to allow Haldane more time to make the monthly payments. The Municipal Court instituted a payment plan for the fines and fees that allowed Haldane to pay $100 per month.

¶13 Haldane appealed his conviction to the District Court. Specifically, Haldane challenged the Municipal Court's denial of his motion to suppress, denial of his motion for a mistrial for wrongfully impaneling the jury, and decision to sustain the State's objection to the defense's attempt to impeach Officer Richardson on cross-examination. The District Court affirmed the Municipal Court on all grounds. Of relevance here, the District Court held that the testimony of the officers was credible and sufficient to support the finding of particularized suspicion for the stop.

¶14 Haldane appeals the District Court's order affirming the Municipal Court's rulings and the jury's verdict. Haldane also raises an ineffective assistance of counsel claim, and challenges his sentence on due process grounds.

**STANDARDS OF REVIEW**

¶15 When reviewing a district court's ruling on a motion to suppress, we determine whether the findings of fact are clearly erroneous and whether the court correctly interpreted the law and applied it to those facts. *State v. Anders*, 2012 MT 62, ¶ 9, 364 Mont. 316, 274 P.3d 720; *State v. Spaulding*, 2011 MT 204, ¶ 13, 361 Mont. 445, 259 P.3d 793; *State v. Hafner*, 2010 MT 233, ¶ 12, 358 Mont. 137, 243 P.3d 435.

¶16 We review de novo the mixed questions of law and fact presented by claims of ineffective assistance of counsel. *Ariegwe v. State*, 2012 MT 166, ¶ 13, 365 Mont. 505, 285 P.3d 424; *State v. Edwards*, 2011 MT 210, ¶ 13, 361 Mont. 478, 260 P.3d 396.

¶17 We review a sentence of less than one year of actual incarceration for both legality and abuse of discretion. *City of Billings v. Edward*, 2012 MT 186, ¶ 17, 366 Mont. 107, 285 P.3d 523; *State v. Breeding*, 2008 MT 162, ¶ 10, 343 Mont. 323, 184 P.3d 313. In reviewing the legality of a sentence, we look to whether the sentencing court had statutory authority to impose the sentence and whether the sentence falls within statutory parameters. *Breeding*, ¶ 10; *State v. Stephenson*, 2008 MT 64, ¶ 15, 342 Mont. 60, 179 P.3d 502. This determination is a question of law and, as such, our review is de novo. *Stephenson*, ¶ 15. A sentencing court abuses its discretion when it acts "arbitrarily without employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice." *Edward*, ¶ 17; *Breeding*, ¶ 10. This Court reviews

6

de novo whether a district court violated a defendant's constitutional rights at sentencing. *State v. Bullplume*, 2011 MT 40, ¶ 10, 359 Mont. 289, 251 P.3d 114; *State v. Hill*, 2009 MT 134, ¶ 20, 350 Mont. 296, 207 P.3d 307.

**DISCUSSION**

¶18  *Was Haldane's constitutional right to be free from unreasonable seizure violated when officers stopped his car based on an obstruction of his temporary registration permit by snow and a trailer hitch?*

¶19  The Fourth Amendment to the United States Constitution and Article II, Section 11 of the Montana Constitution protect individuals from unreasonable searches and seizures. *State v. LeMay*, 2011 MT 323, ¶ 61, 363 Mont. 172, 266 P.3d 1278; *State v. Larson*, 2010 MT 236, ¶ 19, 358 Mont. 156, 243 P.3d 1130. Montanans enjoy even greater protections against government intrusions by virtue of an express right to privacy set forth in Article II, Section 10 of the Montana Constitution. *State v. Graham*, 2007 MT 358, ¶ 12, 340 Mont. 366, 175 P.3d 885; *State v. Bullock,* 272 Mont. 361, 384, 901 P.2d 61, 75-76 (1995). These constitutional protections apply to investigative stops of vehicles by law enforcement. *Lemay*, ¶ 61; *Larson*, ¶ 19.

¶20  Montana law provides that "a peace officer may stop any person or vehicle that is observed in circumstances that create a particularized suspicion that the person or occupant of the vehicle has committed, is committing, or is about to commit an offense." Section 46-5-401(1), MCA. The State bears the burden of proving that an officer had particularized suspicion to stop a vehicle by showing: (1) objective data and articulable facts from which an officer can make certain reasonable inferences; and (2) a resulting suspicion that the person to be stopped has committed, is committing, or is about to

7

commit an offense. *LeMay*, ¶ 62; *Brown v. State*, 2009 MT 64, ¶ 20, 349 Mont. 408, 203 P.3d 842. "Whether particularized suspicion exists is evaluated under the totality of the circumstances and requires consideration of the quantity or content of the information available to the officer and the quality or degree of reliability of that information." *LeMay*, ¶ 62; *City of Missoula v. Moore*, 2011 MT 61, ¶ 16, 360 Mont. 22, 251 P.3d 679.

¶21    The statute at issue here, § 61-3-301(1)(a), MCA, provides that "a person may not operate a motor vehicle . . . upon the public highways of Montana unless the motor vehicle . . . is properly registered and has the proper license plates conspicuously displayed on the motor vehicle." Furthermore, § 61-3-301(1)(a), MCA, requires that the "license plate must be securely fastened to prevent it from swinging and may not be obstructed from plain view." The statute defines "conspicuously displayed" as "obviously visible and firmly attached." Section 61-3-301(4), MCA. Haldane possessed a temporary registration permit at the time of the stop. Section 61-3-224(5), MCA, contains the rules for display of a temporary permit, and similarly requires that the permit "must be plainly visible and firmly attached to the rear exterior of the vehicle where a license plate is required to be displayed."

¶22    Haldane argues that Montana's weather and the prevalence of farm and other towing vehicles make it unlawful for law enforcement officers to effectuate a stop on the sole basis that they cannot read a temporary registration permit due to snow and a ball hitch. Haldane maintains that he did not violate the statute because the temporary registration permit was fully visible and readable once the officers approached the vehicle. Haldane relies on Justice Nelson's concurrences in *State v. Rutherford*, 2009

8

MT 154, 350 Mont. 403, 208 P.3d 389 and *State v. Cooper*, 2010 MT 11, 355 Mont. 80, 224 P.3d 636.

¶23 In *Rutherford*, a witness called 911 and reported a suspected drunk driver after a vehicle pulled out in front her and drove erratically. *Rutherford*, ¶¶ 3-4. The witness could only provide the dispatcher with a partial license plate number because a trailer hitch covered the middle numbers on the plate, but the witness continued to follow the vehicle and provided details about the make, model, and color. *Rutherford*, ¶ 4. The dispatcher relayed this information to a police officer, who identified the subject vehicle and conducted a traffic stop. *Rutherford*, ¶¶ 5-6. The officer informed the driver that he had stopped him because the truck's rear license plate was obstructed and because of a citizen's complaint. *Rutherford*, ¶¶ 6-7. The driver was arrested and charged with DUI. *Rutherford*, ¶ 6.

¶24 The driver challenged whether the arresting officer had particularized suspicion to support the traffic stop. *Rutherford*, ¶ 13. The driver argued that the alleged obstructed license plate could not provide a lawful basis for a traffic stop because the trailer hitch was factory-installed. *Rutherford*, ¶ 13. This Court determined that the citizen informant provided reliable objective data from which the officer could infer that the driver was under the influence. *Rutherford*, ¶ 19. The stop was supported by particularized suspicion, even discounting the matter of the obstructed license plate. *Rutherford*, ¶¶ 18-20. Justice Nelson concurred in the result, but wrote separately to note his belief that an obscured license plate cannot provide particularized suspicion for a traffic stop:

There is nothing in § 61-3-301, MCA, or in *Lacasella*[1] that leads me to the conclusion that an otherwise "conspicuously displayed" and "clearly visible" license plate ceases to be that if the numbers are "obscured" by a trailer hitch, mud, snow, dust, or dirt. If that is the case, then few drivers in this State will be free from a peace officer's discretionary investigatory stop, given the number of vehicles with trailer hitches and given weather, seasonal road conditions, and the number of dirt and farm roads on which we all drive. "Obscured" license plates are a fact of life; we all have them at one time or another. In my view, a peace officer effecting an investigatory stop needs more particularized suspicion of criminal activity than that afforded by an "obscured" license plate which is otherwise attached to the vehicle in accordance with § 61-3-301, MCA.

*Rutherford*, ¶ 27 (Nelson, J., concurring).

¶25 In *Cooper*, a driver pulled out directly in front of a highway patrol trooper, crossed the fog line, executed a U-turn, and proceeded at an incredibly slow speed. *Cooper*, ¶ 3. The trooper performed a traffic stop and told the driver that the reason he stopped her was because her license plate was covered in snow. *Cooper*, ¶ 3. After an ensuing investigation, the driver was charged with DUI. *Cooper*, ¶ 3. Based on the totality of the circumstances, we held that the officer had particularized suspicion to stop the driver. *Cooper*, ¶ 11. Justice Nelson concurred, but reiterated his concerns from *Rutherford*:

I continue to disagree with the proposition that, in this state, a license plate's being obscured by the natural accumulation of the elements or driving conditions can constitute particularized suspicion for *anything*— except that Montanans often drive in foul weather and on foul roads.

*Cooper*, ¶ 15 (Nelson, J., concurring).

---

[1] In *State v. Lacasella*, 2002 MT 326, 313 Mont. 185, 60 P.3d 975, this Court held that an officer did not have particularized suspicion to stop a vehicle with a license plate displayed in the front corner of the windshield, which comported with the requirements of § 61-3-301, MCA. Section 61-3-301, MCA, was amended in 2003 to require display of license plates on the exterior of a vehicle.

¶26 Though both *Rutherford* and *Cooper* involved facts in addition to an obstructed plate that gave rise to particularized suspicion, nothing in these decisions forecloses an officer from conducting an investigatory stop based solely on a violation of § 61-3-301, MCA. "A statutory violation alone is sufficient to establish particularized suspicion for an officer to make a traffic stop." *State v. Schulke*, 2005 MT 77, ¶ 16, 326 Mont. 390, 109 P.3d 744. While we note Justice Nelson's concerns, we cannot ignore the plain language of § 61-3-301, MCA, which requires that a license plate "may not be obstructed from plain view" and must be "obviously visible." The statute serves an important purpose of enabling officers to ascertain if the vehicle is properly registered. *Lacasella*, ¶ 16. Law enforcement officers are unable to check a vehicle's registration if the plates are not conspicuously displayed.

¶27 Officer Shepherd testified at both the suppression hearing and at trial that the reason for the investigatory stop of Haldane was because his license plate was obstructed by snow and a ball hitch. Officer Richardson independently noticed that Haldane's plates were obstructed, and observed this possible violation before discussing it with Officer Shepherd. Because of these obstructions, Officer Shepherd was unable to verify whether the vehicle was properly registered. Such observations are sufficient to allow an officer to develop a resulting suspicion that Haldane was in violation of § 61-3-301, MCA, by having a license plate that was "obstructed from plain view" and not "obviously visible." Even if a vehicle is properly registered, a driver can still be cited for violation of § 61-3-301, MCA, which is a stand-alone offense.

11

¶28 Once Officer Shepherd lawfully stopped Haldane, she was authorized to "request the person's name and present address and an explanation of the person's actions and, if the person is the driver of a vehicle, demand the person's driver's license and the vehicle's registration and proof of insurance." Section 46-5-401(2)(a), MCA. Both officers approached Haldane's vehicle and Officer Shepherd asked for his license, registration, and proof of insurance. We recognize that a stop authorized by § 46-5-401, MCA, "may not last longer than is necessary to effectuate the purpose of the stop." Section 46-5-403, MCA. However, even if the officers could see the license plate when they approached the vehicle and changed their vantage point, the officers still had the right to speak to the driver and request certain documentation.

¶29 We have determined in previous cases that particularized suspicion can be based on "observations between the time [the officer] initiated the stop of the truck and the time he returned [the defendant's] identification." *Larson*, ¶ 26. Officer Richardson noticed that Haldane's speech was slurred, his eyes were bloodshot, and his movements were slow. In addition to these common signs of intoxication, Haldane admitted to consuming two to three beers when Officer Richardson asked if he had been drinking. These facts enlarged the scope of the investigatory stop to include a possible DUI offense. *See State v. Henderson*, 1998 MT 233, ¶ 22, 291 Mont. 77, 966 P.2d 137.

¶30 Haldane has failed to demonstrate that any of the findings of fact upon which the District Court relied in denying Haldane's motion to suppress were clearly erroneous. The District Court correctly interpreted the law and applied it to those facts in finding that the officers had particularized suspicion to support the investigatory stop.

12

Accordingly, we conclude that Haldane's right to be free from unreasonable seizures was not violated.

¶31 *Did Haldane's counsel render ineffective assistance by failing to properly investigate and elicit testimony at the suppression hearing that the officers could in fact read the temporary permit, and later for failing to renew the motion to suppress once the officer testified at trial that he could read the permit?*

¶32 The Sixth Amendment to the United State Constitution and Article II, Section 24 of the Montana Constitution guarantee the right of effective assistance of counsel. *State v. Roundstone*, 2011 MT 227, ¶ 32, 362 Mont. 74, 261 P.3d 1009; *State v. Sartain*, 2010 MT 213, ¶ 29, 357 Mont. 483, 241 P.3d 1032. This Court reviews ineffective assistance of counsel claims under the two-part test of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). *Roundstone*, ¶ 32; *Sartain*, ¶ 29. Under the *Strickland* test, a defendant must prove that (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness, and (2) counsel's performance prejudiced the defense. *Roundstone*, ¶ 32; *Sartain*, ¶ 29. A defendant must satisfy both prongs of the *Strickland* test to prevail on an ineffective assistance of counsel claim. *Whitlow v. State*, 2008 MT 140, ¶ 11, 343 Mont. 90, 183 P.3d 861. A defendant must overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065.

¶33 We will review an ineffective assistance of counsel claim on direct appeal if the record reveals why counsel acted as he did, or if there is "no plausible justification" for what defense counsel did or failed to do. *State v. Kougl*, 2004 MT 243, ¶¶ 14-15, 323 Mont. 6, 97 P.3d 1095. While the record does not contain information regarding why

13

Haldane's attorney acted as he did at trial and during the suppression hearing, the record does reveal a rather lengthy line of questions regarding how Officer Richardson verified the registration of the vehicle and what he observed during the traffic stop. In fact, the District Court described the cross-examination as "dizzying." Haldane's direct appeal can be sustained only upon a showing that there was "no plausible justification" for his counsel's actions.

¶34 Haldane asserts that his counsel failed to elicit testimony from Officer Richardson at the suppression hearing regarding whether Officer Richardson could read Haldane's temporary registration permit once he approached the vehicle. At the suppression hearing, Officer Shepherd testified that she verified that Haldane's vehicle was properly registered, but could not recall how she had done so. Officer Richardson testified that he believed Haldane provided documentation which enabled them to check the registration, but he was also unable to recall those details with certainty. At trial, defense counsel pointed out that Haldane's citation actually contained the license plate number, and Officer Richardson testified that he may have been able to see the plate number once he approached the vehicle and viewed it from a different angle. Haldane argues that had this testimony been elicited at the suppression hearing, the motion to suppress would have been granted. We disagree.

¶35 Section 61-3-301, MCA, requires that a license plate "may not be obstructed from plain view" and must be "obviously visible." Both officers testified that Haldane's temporary registration permit was obscured by snow and a ball hitch and could not be seen when they were driving directly behind Haldane's vehicle. Officer Richardson was

14

unable to read the numbers on the license plate until he changed his vantage point and was standing directly behind the vehicle. The fact that Officer Richardson could see the plate after approaching on foot and standing directly over it does not change the fact that both officers were unable to read the license plate from their vehicles.

¶36 The terms "obviously visible" and "plain view" certainly contemplate a higher standard of visibility than that the plate merely be decipherable upon close inspection by an officer who has exited his vehicle and stands over the bumper. "The purpose of requiring a license plate to be conspicuously displayed on the front and rear of a vehicle is to enable law enforcement officers to ascertain whether a vehicle that is approaching or being followed is properly registered." *Lacasella*, ¶ 16. Haldane's interpretation of § 61-3-301, MCA, compels a hypertechnical reading of the statute and ignores its purpose. As discussed in ¶¶ 27-30 of this Opinion, the investigatory stop was supported by particularized suspicion and the officers did not exceed the permissible scope of the investigatory stop. The fact that Officer Richardson could read the license plate numbers upon close inspection does not change these legal conclusions.

¶37 An ineffective assistance of counsel claim cannot succeed when predicated on counsel's failure to take an action which, under the circumstances, would likely not have changed the outcome of the proceeding. *Riggs v. State*, 2011 MT 239, ¶ 11, 362 Mont. 140, 264 P.3d 693; *Heddings v. State*, 2011 MT 228, ¶ 33, 362 Mont. 90, 265 P.3d 600. We conclude that there is no reasonable probability that the results of Haldane's proceedings would have been different had his counsel elicited additional testimony at the suppression hearing or renewed his motion to suppress at trial. Therefore, we hold

that Haldane has failed to demonstrate that he was prejudiced by his counsel's actions, and his ineffective assistance of counsel claims must fail.

¶38    *Did Haldane's sentence violate due process because it was based on indigency?*

¶39    At the outset, the State argues that Haldane has waived his right to challenge his sentence because he did not object when it was announced by the Municipal Court and did not raise the issue in his appeal to the District Court. The State also contends that Haldane's active participation in the sentencing discussion precludes his right to challenge his sentence on appeal. While the State is correct in its statement of the general rule for preserving an issue for appeal, the State fails to consider the *Lenihan* exception, which reads as follows:

> It appears to be the better rule to allow an appellate court to review any sentence imposed in a criminal case, if it is alleged that such sentence is illegal or exceeds statutory mandates, even if no objection is made at the time of sentencing.

*Adams v. State*, 2007 MT 35, ¶ 55, 336 Mont. 63, 153 P.3d 601; *State v. Garrymore*, 2006 MT 245, ¶ 11, 334 Mont. 1, 145 P.3d 946 (quoting *State v. Lenihan*, 184 Mont. 338, 343, 602 P.2d 997, 1000 (1979)). This Court will hear Haldane's constitutional challenge to his sentence under the *Lenihan* exception.

¶40    A criminal defendant's sentence must comport with the due process guarantees of the Fourteenth Amendment to the United State Constitution and Article II, Section 17 of the Montana Constitution. "[A] criminal defendant's right to due process requires that indigency or poverty not be used as the touchstone for imposing the maximum allowable punishment." *State v. Pritchett*, 2000 MT 261, ¶ 28, 302 Mont. 1, 11 P.3d 539; *State v.*

16

*Farrell*, 207 Mont. 483, 499, 676 P.2d 168, 177 (1984) (internal quotations marks omitted).

¶41     In *Farrell*, the defendant was convicted of theft of public assistance funds and was given the maximum ten-year sentence, all suspended. *Farrell*, 207 Mont. at 487, 676 P.2d at 171. The sentencing court stated that it was imposing the maximum sentence, suspended, because it did not think that the defendant could pay the restitution imposed in less than ten years. *Farrell*, 207 Mont. at 494, 676 P.2d at 174. The defendant challenged the length of his sentence on appeal, alleging that he was sentenced to the maximum time because he was indigent. *Farrell,* 207 Mont. at 493-94, 676 P.2d at 174-75. This Court applied a due process analysis and concluded that it was arbitrary and unfair to subject a defendant to the maximum sentence simply because he may not be able to pay the restitution in less than that amount of time. *Farrell,* 207 Mont. at 498, 676 P.2d at 176-77. We vacated the defendant's sentence and remanded for further proceedings. *Farrell,* 207 Mont. at 499, 676 P.2d at 177.

¶42     In *Pritchett*, the defendant was convicted of burglary and given the maximum twenty-year sentence, all suspended. *Pritchett*, ¶ 26. The record revealed that the probation/parole officer who prepared the presentence investigation report explicitly recommended the sentence to "give the Defendant adequate time to pay off the restitution." *Pritchett*, ¶ 3. This Court determined that, while the sentencing court did not expressly state it was doing so, sufficient evidence in the record supported a conclusion that the length of the sentence was based on the defendant's indigency, thus violating his due process rights. *Pritchett*, ¶¶ 35, 37.

¶43 Our review of the record demonstrates that the Municipal Court imposed the maximum sentence on Haldane based on his inability to pay the fines and fees. The record shows that the Municipal Court initially discussed sentencing Haldane to six months in the Gallatin County Detention Center with all but three days suspended, ordering fines totaling $935, and imposing other sentencing conditions. Later in the sentencing hearing, the following colloquy took place:

> THE COURT: Okay, so the total on that [fines/fees] is going to be $935. And do you want to make monthly payments on that or can you pay that in one shot, Mr. Haldane?
>
> HALDANE: I'd have to make monthly payments.
>
> THE COURT: What kind of work are you doing right now?
>
> HALDANE: I detail cars. With the possibility of my license being suspended I might not have a job, so I could probably do $100 a month right now.
>
> THE COURT: Okay, why don't we do this. I'm going to suspend sentence for one year, and that'll give, that'll give you some extra time. It'll be a six-month sentence suspended for one year except for three days. And with that extra time I'll go ahead and give you $100 a month time payment schedule.

Section 61-8-714(1), MCA, provides that the penalty for DUI first offense shall be imprisonment for not less than 24 hours or more than six months, and by a fine of not less than $300 or more than $1,000. Except for the initial 24 hours of imprisonment, the imprisonment sentence may be suspended for a period of up to one year pending successful completion of court-ordered chemical dependency assessment, education, or treatment. Section 61-8-714(1)(c), MCA. The preceding discussion demonstrates that, by suspending the sentence for a full year instead of doing so for six months, as originally

18

intended, the Municipal Court imposed the maximum sentence available under § 61-8-714, MCA, because of Haldane's financial situation. Pursuant to *Pritchett* and *Farrell*, such sentencing justifications violate due process.

¶44 Accordingly, we hold that the Municipal Court violated Haldane's due process rights by imposing the maximum sentence for his DUI offense based on his indigency.

## CONCLUSION

¶45 For the foregoing reasons, we affirm the District Court's denial of Haldane's motion to dismiss and reject his ineffective assistance of counsel claims. We vacate Haldane's DUI sentence on due process grounds, and remand for entry of a new sentence in accordance with this Opinion and the due process guarantees of the Fourteenth Amendment to the United States Constitution and Article II, Section 17 of the Montana Constitution.

/S/ Patricia Cotter

We Concur:

/S/ Mike McGrath
/S/ Beth Baker
/S/ Michael E Wheat
/S/ Brian Morris